Gene A. **BERRY**, et al., Plaintiffs,

v.

Paul **GARZA** d/b/a
**WindowMasters**, Defendant.

No. 89–0629–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

March 16, 1990.

Gardiner B. Davis, Alison Armstrong and
Andrew W. Stumpff, Spencer, Fane, Britt

& Browne, Kansas City, Mo., for plaintiffs/trustees.

Robert J. Janowitz and Cyprienne Simchowitz, Shook, Hardy & Bacon, and Edward J. O'Reilly, Fallon, Sappington & O'Reilly, Kansas City, Mo., for defendant.

ORDER

WHIPPLE, District Judge.

This matter is before the court on cross-motions for summary judgment. This is an action by the trustees of Service Employees International Union Local 96 Building Service Employees Insurance Welfare Fund, pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132. Plaintiffs seek to collect fringe benefit contributions owed by defendant under a collective bargaining agreement executed by Service Employees International Union Local 96 Building Service Employees ("Union") and defendant on December 4, 1987.

The relevant facts are not in dispute. Defendant Paul Garza is the sole proprietor and owner of WindowMasters, a business engaged in window cleaning residential and commercial buildings. In December 1987, WindowMasters employed five full-time employees: defendant's brother, David Garza, Andy Daude, Jeff Vandergriff, Ryan Roberts and Dan Mabrey. On or about December 2, 1987, defendant met with Gene Berry, Secretary–Treasurer of the Union and orally agreed to make WindowMasters a unionized company so that defendant could commence a commercial window cleaning job for a unionized janitorial service company. Defendant also hoped to submit bids for other union work. Berry told defendant that the collective bargaining agreement contained a union security clause requiring WindowMaster's employees to become members of the Union as a condition to their continued employment at WindowMasters. Berry then gave defendant union membership application cards and requested that they be signed by WindowMaster's employees. On December 2, 1987, defendant informed Mr.

Vandergriff that he had entered into an agreement with the Union so as to obtain union work and that Vandergriff and the other employees had to become members of the Union. On December 2, 1987, Vandergriff signed a membership application card. On December 4, 1987, after being told the same information as Mr. Vandergriff, Mr. Roberts signed a membership application card. On that same day, defendant also signed a membership application card and returned to Berry's office with the signed cards. While in Mr. Berry's office, defendant signed a collective bargaining agreement ("Agreement") dated April 1, 1986, which had expired on September 30, 1987. Defendant also signed an addendum to the Agreement.[1] Defendant never made any of the contributions required under the Agreement, and only performed one union job. The Agreement and addendum are the basis for plaintiffs' complaint.

Defendant asserts that the Agreement is unenforceable because it violates certain provisions of the National Labor Relations Act, ("NLRA").[2] Under § 7 employees have the right to bargain collectively through representatives of their own choosing, and under §§ 8(a)(1) and 8(b)(1)(A), respectively, an employer and/or union may not interfere with, restrain, or coerce employees in the exercise of that right. Section 9(a) of the NLRA provides that employee representatives will be "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes...." Defendant argues the Agreement is unenforceable because only two of defendant's five employees signed union membership application cards and, therefore, the Union did not have a majority status when the Agreement was executed.

A collective bargaining agreement is void and unenforceable if it violates federal labor law. *Pipe Fitters Health & Welfare Trust v. Waldo, R. Inc.*, 872 F.2d 815, 817 (8th Cir.1989); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). When an employer and a union enter into a collective bargaining agreement before a majority of the employees have selected a bargaining representative, that agreement is void and unenforceable because it violates the employees' § 7 rights.[3] *International Ladies' Garment Workers Union v. NLRA*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961).

Plaintiffs do not challenge defendant's contention that at the time the Agreement was executed the Union did not represent a majority of defendant's employees and, therefore, the Agreement violates federal labor law. Plaintiffs rely on the argument that defendant's defense is barred by the six-month statute of limitations contained in 29 U.S.C. § 160(b). Section 160(b) states in relevant part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board [National Labor Relations Board] ..."

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the instant case, there is no dispute as to the facts and the implications of the law with regard to those facts. If defendant is not barred from asserting his defense, the Agreement is unenforceable because it violates federal labor law, and summary judgment must be

---

**1.** The addendum provided:

I [Paul Garza], acknowledge the fact that this contract is expired and will continue to comply with the contractual language and am fully aware of the new changes to the Health & Welfare contributions and will abide by them until the new contract is completed.

**2.** 29 U.S.C. § 151, *et seq.*, as amended.

**3.** Under 29 U.S.C. § 158(f), it is not an unfair labor practice for an employer in the construction industry to enter into a collective bargaining agreement with a minority union. It is not disputed that defendant was not "an employer in the construction industry."

entered for defendant. Therefore, the dispositive issue before the court is whether defendant is barred, pursuant to 29 U.S.C. § 160(b), from asserting the defense that the Agreement between the Union and defendant is void and unenforceable as a matter of law because it violates the NLRA.

Plaintiffs argue that the United States Supreme Court in *Local Lodge No. 1424 v. NLRB (Bryan Manufacturing)*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), expanded the six-month statute of limitations in Section 160(b) to encompass defenses based on unfair labor practices as well as actual claims or charges of unfair labor practices. In *Bryan Manufacturing*, the Court held in relevant part:

[D]ue regard for the purposes of § 10(b) [29 U.S.C. § 160(b)] requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which is otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

(footnote omitted) *Id.* at 416–417, 80 S.Ct. at 826–827.

Plaintiffs contend that the case at bar is of the latter variety described by the Court. This court disagrees with plaintiffs' interpretation of *Bryan Manufacturing*.

In *Bryan Manufacturing, supra*, the employer, Bryan Manufacturing Company, and the International Association of Machinists, AFL, ("IAM Union"), entered into a collective bargaining agreement ("IAM Agreement") on August 10, 1954. At the time, the IAM Union did not have the support of the majority of Bryan Manufacturing's employees. Later, in June and August of 1955, a claim of unfair labor practice was filed against the IAM Union based on the IAM Union's lack of majority status at the time the August 10, 1954 IAM Agreement was executed. The Court held that the claim was barred pursuant to § 160(b) because the Agreement was otherwise valid on its face, and there would be no basis for a claim of unfair labor practice unless events beyond the six-month statutes of limitations were considered. *Id.* at 419, 80 S.Ct. at 828. Nowhere in the opinion, either explicitly or implicitly, does the Court state that a defense of illegality of a collective bargaining agreement is subject to the six-month statute of limitations contained in § 160(b).

However, another case cited by plaintiffs, *NLRB v. Tragniew, Inc.,* 470 F.2d 669 (9th Cir.1972), appears at first glance to support their argument. There, the court held that "[d]ecisions since *Bryan Mfg. Co.* have applied its [§ 160(b)] principle to bar defenses based on unfair labor practices, as well." *Id.* at 673. (citing *NLRB v. District 30, United Mine Workers (Blue Diamond)*, 422 F.2d 115 (6th Cir.1969) and *Lane–Coos–Curry–Douglas Counties Bldg. & C.T.C. v. NLRB*, 415 F.2d 656, 659 n. 7 (9th Cir.1969).) However, the facts and issues raised in *Tragniew* and the other cited cases are distinguishable from the case at bar.

In *Tragniew*, as in the *Blue Diamond* and *Lane* cases, a claim of unfair labor practice had been filed with the NLRB. In each case, the defendant attempted to evade responsibility for the unfair labor practice filed against it by asserting time-barred evidence of another unfair labor practice. In these instances, the courts held that the evidence was inadmissible to thwart the unfair labor practice charge. Thus, the courts would not allow evidence

of a time-barred unfair labor practice to be utilized so as to enable defendant to continue the unfair labor practice with which it was charged. The crucial difference with regard to the case at bar is that, here, plaintiffs seek to enforce an agreement which constitutes an unfair labor practice. Defendant is not asserting the illegality defense in an attempt to shield himself from an unfair labor practice charge in the hopes of continuing such practice. Rather, defendant is utilizing the defense to void an agreement which perpetuates an unfair labor practice. Therefore, the *Tragniew* case and the other similar cases cited by plaintiffs, though seemingly relevant, are not controlling in this instance.

The dispositive issue in the case at bar is controlled by the decisions in *Kaiser Steel Corp. v. Mullins, supra,* 455 U.S. 72, 102 S.Ct. 851, and *Pipe Fitters Health & Welfare Trust v. Waldo, R. Inc., supra,* 872 F.2d 815. In both cases, an employer was sued for nonpayment of certain contributions to a union trust fund and the issue before the court was the illegality and, therefore, enforceability of a collective bargaining agreement. Neither opinion directly addressed the issue of whether the six-month statute of limitations in § 160(b) applies to an illegality defense asserted in litigation regarding the enforcement of a collective bargaining agreement. Nor did they have to address the issue directly because the implication of the decisions is quite clear: There is no such limitation.

In *Kaiser Steel, supra,* a United States Supreme Court case decided after *Bryan Manufacturing,* the Court stated that "[t]he issue here is whether a coal producer [defendant], when it is sued on its promise to contribute to union welfare funds ..., is entitled to plead and have adjudicated a defense that the promise is illegal under the antitrust and labor laws." 455 U.S. at 74, 102 S.Ct. at 854–855. The defense of illegality in this instance was based on violation of § 8(e) of the NLRA, otherwise known as the hot cargo provision, which forbids contracts between a union and an employer wherein the employer agrees to stop doing business with or stop handling the products of another employer. Violation of § 8(e) constitutes an unfair labor practice. The Court held that "a federal court has a *duty* to determine whether a contract violates federal law before enforcing it." (emphasis added). *Id.* at 83, 102 S.Ct. at 859. The Court further stated that the illegality defense should be addressed in those instances where its rejection would enforce conduct that the federal laws forbid. *Id.* at 81–82, 102 S.Ct. at 858–859.

The agreement at issue in *Kaiser* was executed in 1974, the suit based on that agreement was filed against defendant on April 11, 1978.[4] Despite the fact that the unfair labor practice was committed well over six months prior to the filing of plaintiff's claim and necessarily, the assertion of the illegality defense based on that unfair labor practice, the Supreme Court reached the merits of the affirmative defense. If plaintiffs' interpretation of *Bryan Manufacturing, supra,* were correct, surely the Supreme Court of the United States in *Kaiser* would have followed its own precedent and barred the adjudication of the merits of defendant's defense. Instead, the *Kaiser* court stressed the importance of addressing an illegality defense based on an unfair labor practice or any other violation of federal law before enforcing a collective bargaining agreement.

In *Waldo, supra,* a union filed suit against an employer for violating their collective bargaining agreement. The employer defended by alleging that the agreement was unenforceable because the union did not have majority status when the agreement was executed, thus violating federal labor law. The agreement at issue was originally executed in 1982 and renewed in 1983, and again, significantly, the union did not bring suit until sometime in 1984. The Eighth Circuit Court of Appeals found that an unfair labor practice had not been committed, but the importance of the court's decision, for our purposes, is not its decision regarding Waldo's defense. The importance of the *Waldo* decision is that the court of appeals *addressed* the merits of

---

**4.** This information is found in the district court's opinion at *Mullins v. Kaiser Steel Corp.,*

466 F.Supp. 911 (D.D.C.1979).

Waldo's affirmative defense of illegality. This, despite the obvious fact that the alleged unfair labor practice occurred more than six months prior to the instigation of the lawsuit and necessarily, the assertion of the defense based on that unfair labor practice. The court, guided by the *Kaiser* opinion, held that a district court has "the authority to find collective bargaining agreements unenforceable if they violate federal labor law." 872 F.2d at 817.

Based on the decisions in *Kaiser Steel, supra,* and *Waldo, supra,* this court finds that defendant is not barred from asserting its defense of illegality. Therefore, the defendant is entitled to summary judgment as a matter of law, and necessarily, plaintiffs' motion must be denied. The court need not address the other issues presented by counsel since the affirmative defense issue is dispositive of the parties' motion.

Accordingly, it is

ORDERED that plaintiffs' Motion for Summary Judgment, filed January 29, 1990 is denied. It is further

ORDERED that defendant's Motion for Summary Judgment, filed January 17, 1990 is granted. It is further

ORDERED that summary judgment is entered in favor of defendant and against plaintiffs. The costs shall be borne by the parties who incurred them.